## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**REGIONS BANK**                                                                 **PLAINTIFF**

**v.**                                                               **No. 3:23-cv-00350-MPM-RP**

**STEVEN SCARBROUGH**                                                          **DEFENDANT**

### ORDER

This cause comes before the Court on Defendant Steven Scarbrough's Motion to Dismiss for Lack of Jurisdiction [9] pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") and failure to join an indispensable party under Rule 12(b)(7) of the FRCP. Defendant Scarbrough files this motion in response to Plaintiff Regions Bank's ("Regions") Motion to Compel Arbitration and Motion to Stay Proceedings [3]. The Court has reviewed the motions, responses, and replies, along with relevant case law and evidence, and is now prepared to rule on all motions.

### RELEVANT FACTS AND PROCEDURAL HISTORY

In June of 2022, the decedent, Sam Scarbrough, was the sole owner of a certificate of deposit ("CD") worth $100,000. The account was created on October 3, 2017, and named Sam's brother, Steven Scarbrough, as the third-party payable-on-death ("POD") beneficiary.

On June 24, 2022, Sam and his wife, Tonya Ann Scarbrough, went to Regions to purchase a new CD. Sam completely withdrew all funds from the old CD and requested that Regions transfer the withdrawn funds to a new account jointly owned by him and his wife. Ms. Blissard was the Regions employee who assisted the couple with the purchase of the new account. Sam instructed Ms. Blissard to open a new CD, transfer the funds from the old CD to the new CD, and not to make any other changes regarding the third-party POD beneficiary. Sam passed away shortly after on

August 15, 2022. After his death, Steven Scarbrough and Tonya Ann returned to Regions to collect the funds from the new CD. Ms. Blissard told Mr. Scarbrough to return with his brother's death certificate and confirmed that he was in fact listed as the third-party POD beneficiary on the CD. After returning with a copy of the death certificate, Ms. Blissard informed Mr. Scarbrough that there was "an issue with the CD" and that she would "have to get with the legal department and have this corrected."

In September of 2022, Mr. Scarbrough returned to Regions to follow up on the status of his funds but was informed by Ms. Blissard that there was no CD in which he was listed as a third-party POD beneficiary, though Ms. Blissard confirmed that Sam was "adamant" that his brother remain listed as the third-party POD beneficiary when he opened the new CD on June 24, 2022. Ms. Blissard indicated that when Sam had come in to purchase the new CD, she had passed the CD off to another Regions employee to finish setting it up and that she was "not sure what happened." Mr. Scarbrough continued to return each month to follow up on the status of the CD as instructed by Ms. Blissard; each time he was met with the same response that it was "still tied up in the legal department." Ms. Blissard retired sometime thereafter, and Mr. Scarbrough was never notified of the status of the CD or what happened to the funds. The funds have since been liquidated and disbursed through the Estate of Sam Scarbrough.

On June 21, 2023, Mr. Scarbrough sued Regions Bank and Ms. Blissard in the Chickasaw County Circuit Court for breach of contract, breach of fiduciary duty, respondeat superior, negligent misrepresentation, fraudulent misrepresentation, negligence, fraud, and infliction of emotional distress, among others. On September 11, 2023, Regions filed a Motion to Compel Arbitration and a Motion to Stay Proceedings [3] in this Court, contending that Mr. Scarbrough is bound to arbitration pursuant to a Deposit Agreement signed by the decedent upon the creation of

2

the account in 2017. However, Mr. Scarbrough asserts that he is not bound by the arbitration provision associated with the 2017 account as the only account in dispute is the new CD created in 2022. Mr. Scarbrough further contends that he should not be bound to arbitration because he was not listed as the third-party POD beneficiary on the new CD, nor did he sign an arbitration agreement.

## STANDARD OF REVIEW

As a preliminary matter, the Court must decide whether it has subject-matter jurisdiction over this case. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In assessing whether there is jurisdiction, courts may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016). Therefore, "[i]n considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy that it has the power to hear the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (citation omitted).

Federal courts are courts of limited jurisdiction and, therefore, "must presume that a suit lies outside this limited jurisdiction." *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). The party seeking the federal forum bears the burden of establishing jurisdiction. *Howery*, 243 F.3d at 919. When such jurisdiction is based on diversity, the statute requires complete diversity between the parties, which must be "distinctly and affirmatively alleged." *Id.*; 28 U.S.C. § 1332. "Failure to adequately allege the basis for diversity jurisdiction mandates dismissal." *Stafford v.*

3

*Mobile Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991). The court cannot assume diversity of citizenship exists. *Elam v. Kansas City Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011). Here, Regions has alleged that complete diversity exists.

## DISCUSSION

The defendant brings forth this motion to dismiss for lack of subject-matter jurisdiction in response to the plaintiff's motion to compel arbitration and stay proceedings in state court. The defendant asserts that the plaintiff failed to join an indispensable party to the suit, and that necessary joinder of such party would destroy complete diversity of citizenship between the parties, thus denying this Court of subject-matter jurisdiction.

### I.     Diversity Jurisdiction

The Federal Arbitration Act ("FAA") does not create an independent basis for federal subject matter jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). Rather, there must be diversity of citizenship between the parties or an independent federal question within the underlying dispute before the court can compel arbitration. *Id*.

Section 4 of the FAA, 9 U.S.C. § 4, authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, "save for [the arbitration] agreement," over "a suit arising out of the controversy between the parties." *Vaden v. Discover Bank*, 129 S.Ct. 1262 (2009). When determining whether this Court has jurisdiction over the controversy, the Court must "look through" the § 4 petition to the substantive controversy between the parties. *Id*. at 1265. The "look through" approach permits a federal court to entertain a § 4 petition "only when a federal-question suit is already before the court, when the parties satisfy the requirements for diversity-of-citizenship jurisdiction, or when the dispute over arbitrability involves a maritime contract." *Id*. at 1275.

As the Fifth Circuit interprets *Vaden*, the Court must look to the whole dispute, including any state-court pleadings, to define "controversy"; however, extending the look-through test to define the *parties* to that controversy is error. *ADT, L.L.C. v. Richmond,* 18 F.4th 149, 151 (5th Cir. 2021). Section 4 defines the "parties" as "those who refuse to abide their agreement to arbitrate and those whom they aggrieve by doing so. Non-parties to that suit do not matter." *Id*. at 152. The Fifth Circuit favors the viewpoint that Section 4's text refers only to "the parties to the petition to compel arbitration" and not everyone against whom one party claims relief. *Id*. at 155. However, a wrinkle remains if joinder of an indispensable party is necessary to avoid serious prejudice to that person or the parties already joined. *Id*.

As the underlying controversy to the § 4 petition does not pertain to a federal question, complete diversity of citizenship between the parties to the petition must exist for this Court to have subject-matter jurisdiction over the case. As required under 28 U.S.C. § 1332, the parties to the action must be completely diverse and the matter in controversy must exceed $75,000. This Court must refrain from looking through the § 4 petition to the *original* parties in a parallel state court action in its analysis and must only look to the parties of the pending federal court action in determining diversity jurisdiction. With this in mind, diversity of citizenship exists as Regions is a citizen of Alabama and Mr. Scarbrough is a citizen of Mississippi, and the amount in controversy is $100,000. Therefore, the Court maintains subject-matter jurisdiction over this dispute.

**II.     Joinder of an Indispensable Party under Rule 19**

Mr. Scarbrough moves this Court to dismiss Regions' Motion to Compel Arbitration [3] for failure to join Ms. Blissard as an indispensable party under Rule 12(b)(7) of the FRCP.

Under Rule 19 of the FRCP, a person subject to process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined if:

(1) in the person's absence complete relief cannot be accorded among those already

parties, or (2) the person claims an interest relating to the subject of the action and

is so situated that the disposition of the action in the person's absence may (i) as a

practical matter impair or impede the person's ability to protect that interest or (ii)

leave any of the persons already parties subject to a substantial risk of incurring

double, multiple, or otherwise inconsistent obligations by reason of the claimed

interest. Fed. R. Civ. P. 19(a).

If a person who qualifies under Rule 19(a) cannot be made a party because joinder would destroy

complete diversity between the parties, a federal court must determine whether that person is

"indispensable" to the suit. *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 393 (5th Cir. 2006). In

making this determination, the court should consider:

first, to what extent a judgment rendered in the person's absence might be

prejudicial to the person or those already parties; second, the extent to which, by

protective provisions in the judgment, by the shaping of relief, or other measures,

the prejudice can be lessened or avoided; third, whether a judgment rendered in the

person's absence will be adequate; fourth, whether the plaintiff will have an

adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

In assessing these factors, the Court must determine whether "in equity and good conscience, the

action should proceed among the existing parties or should be dismissed." *Id*.

In *Brown v. Pacific Life Ins. Co.*, the Fifth Circuit dealt with a similar issue before this

Court. The plaintiffs appealed a district court ruling denying their motion to dismiss for lack of

jurisdiction. 462 F.3d at 393. The plaintiffs argued that a party from a parallel state court action

should have been joined to the suit as an indispensable party whose joinder would have destroyed

6

diversity jurisdiction. *Id*. The allegedly indispensable party was a representative of a securities brokerage account who managed the investment accounts for the plaintiffs. *Id*. at 389. While the plaintiffs asserted various claims against the representative in state court, including fraud, negligence, and breach of fiduciary duties, the Fifth Circuit affirmed the district court's denial of dismissal because the potential threat of piecemeal, inconsistent litigation is insufficiently prejudicial to render a party indispensable under Rule 19 given the oft-stated preference for arbitration under the FAA. *Id*. at 394. The mere existence of a state suit against an agent does not automatically deem that party "indispensable" to an action in federal court compelling arbitration by the principal.

Mr. Scarbrough asserts that the allegations against Ms. Blissard regarding her personal acts of negligent misrepresentation, fraudulent misrepresentation, and fraud are sufficient to establish a colorable cause of action against her, and that such allegations "occurred in conjunction with, and are intrinsically interwoven with, the breaches of duty alleged against the corporate defendant, Regions, in the state court action (Plaintiff here)." *Memorandum in Support of Defendant's Motion to Dismiss* [6]. Mr. Scarbrough further contends that Ms. Blissard's consent to arbitration in and of itself indicates an admission by Regions that Ms. Blissard is a necessary and indispensable party. The Court is unpersuaded by Mr. Scarbrough's position. The fact that Ms. Blissard's actions are "intrinsically interwoven" with the breaches of duty alleged against Regions does not necessarily deem those actions "indispensable" for purposes of Regions' motion to compel arbitration, but rather the interwovenness of Ms. Blissard's actions further supports the position that Regions may be held liable for her actions through respondeat superior. However, the issue before the Court at this time is not to determine the extent of Ms. Blissard's liability as she is not a named party to this action and should not be joined as an indispensable party. As the Fifth

7

Circuit established in *Brown*, the threat of piecemeal litigation in the absence of Ms. Blissard to the present case is insufficiently prejudicial to establish joinder.

### III.     Motion to Compel Arbitration

In adjudicating a motion to compel arbitration under the FAA, 9 U.S.C. §§ 1-16, a court first considers whether the parties agreed to arbitrate the dispute in question. *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). To make this determination, the court considers "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that agreement." *Id*. Ordinary contract principles apply to this analysis. *Id*. at 538. A court cannot compel a party to arbitrate when it never agreed to. *Moses H. Cone*, 460 U.S. at 19–20.

The underlying dispute in this case is whether Mr. Scarbrough is entitled to receive the $100,000 held in a joint account with Regions that was created on June 24, 2022. Mr. Scarbrough was left off of his brother's joint account due to the alleged negligence of Ms. Blissard, who served as an employee of Regions. However, it is of note that there are critical factual discrepancies made by both parties regarding the joint bank account that is at the core of this dispute. Mr. Scarbrough holds firm that there is no dispute as to the bank account created on October 3, 2017, ending in -1408. This account, which previously contained Sam Scarbrough's $100,000, listed his brother, Mr. Steven Scarbrough, as the third-party POD beneficiary. When Sam completely withdrew all funds from the -1408 account, he transferred the funds into a new joint bank account ending in -4225, which was jointly owned by Sam and Tonya Ann Scarbourgh. The parties have stipulated that Sam "adamant[ly]" instructed Ms. Blissard to keep his brother as the POD beneficiary of the new joint account. Of note, Mr. Scarbrough refers to the joint account in his reply brief as the account ending in -8235. *Rebuttal Memorandum in Support of Defendant's Motion to Dismiss* [1].

Additionally, Regions attached the Signature Card of the Transferee Account which they claim binds Mr. Scarbrough to the Deposit Agreement containing an arbitration provision. Ex. 4. This document supposedly represents the transfer of Sam's funds from the old account created in 2017 to the new joint account created in 2022; however, this document is dated June 6, 2006 and stamped July 13, 2006. The inconsistent date on the Signature Card of the Transferee Account was neither explained in the parties' briefs nor supplemented by additional documentation. In order for the Court to accurately rule on Regions' motion, the inconsistency with the new account should be clarified as the account is at the heart of this dispute.

Assuming the date on the Signature Card is not material, this Court believes it would be inequitable to hold Mr. Scarbrough to the arbitration provision that is inconspicuously referred to on the Signature Card for the new account when Mr. Scarbrough did not sign the Signature Card nor was his name included as the third-party POD beneficiary. Given these facts, the first prong of the two-step inquiry fails because the parties have not agreed to arbitrate, and therefore, it would be unjust to bind Mr. Scarbrough to arbitration.

### a. Equitable Estoppel

Regions asserts that equitable estoppel and Mr. Scarbrough's claim that he should be a third-party beneficiary to the contract bars evasion of the arbitration agreement between Regions and the decedent as Mr. Scarbrough seeks to benefit from the contract. The decision of whether an arbitration agreement should be enforced against a non-signatory, such as on the basis of equitable estoppel, is a question for courts and not arbitrators. *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022). The principle of equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes as well." *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir.

2004). Mr. Scarbrough has not accepted any benefits under the contract nor has Mr. Scarbrough been treated as a beneficiary under the contract for any other purpose. This Court finds it inequitable to allow Regions to treat Mr. Scarbrough as a beneficiary for purposes of binding him to arbitration but not treat him as the beneficiary of the decedent's joint account entitling him to his brother's funds. To allow such inconsistent positions would be inequitable. Had Mr. Scarbrough been listed as the third-party beneficiary to begin with, there would be no need to compel arbitration. For the reasons set forth above, the Court must deny Regions' motion to compel arbitration.

### b. *Colorado River* Abstention

Under the *Colorado River* doctrine, "abstention from the exercise of federal jurisdiction is the exception, not the rule" and should only be applied under "exceptional circumstances." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). In determining whether "exceptional circumstances" exist, the court should balance the following factors: "(1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction." *Brown*, 462 F.3d at 395. "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id*. (quoting *Moses H. Cone*, 460 U.S. at 16).

Mr. Scarbrough contends that the Court should abstain from hearing this action pursuant to the *Colorado River* doctrine due to parallel proceedings in state court that may lead to

10

inconsistent outcomes regarding the enforceability of the arbitration agreement. However, the avoidance of piecemeal litigation has been unpersuasive in encouraging federal courts to abstain from hearing an action brought under the FAA. The FAA requires piecemeal litigation when it is necessary to give effect to an arbitration agreement. *Moses H. Cone*, 460 U.S. at 19-20. The Fifth Circuit has held that "even if some piecemeal litigation does result, that sometimes is the inevitable result of a congressional policy strongly favoring arbitration." *Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1265 (5th Cir. 1994). While this Court does not favor arbitration given the specific facts of this case, the potential for piecemeal litigation, balanced against the remaining factors with an eye toward the exercise of jurisdiction, is insufficiently prejudicial to warrant abstention.

### IV. Motion to Stay Proceedings

The Anti-Injunction Act generally prohibits the federal courts from interfering with proceedings in the state courts. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 145 (1988). "A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The latter of the three exceptions, also referred to as the relitigation exception, was designed to allow a federal court to prevent state litigation of an issue that was previously presented and decided by the federal court. 486 U.S. at 147. The Supreme Court makes clear that "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Id*. at 148. Because this Court finds it unjust to compel arbitration when Mr. Scarbrough was neither listed as a beneficiary nor signed an arbitration agreement, a stay of the state court proceedings is not required to protect this Court's judgment. The original claims asserted in the Scarbrough suit can be effectively adjudicated in the

11

state court without disrupting the judgments of this Court. Therefore, Regions' motion to stay proceedings is denied.

### CONCLUSION

For the reasons stated above,

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss [9] for lack of jurisdiction is **DENIED** as Ms. Blissard is not an indispensable party subject to joinder under Rule 19. This Court maintains subject matter jurisdiction over the dispute as the parties to the § 4 petition are diverse and the amount in controversy exceeds $75,000.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Compel Arbitration [3] is **DENIED** as Mr. Scarbrough did not consent to arbitration nor was he listed as a beneficiary to the account in dispute.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Stay Proceedings [3] is **DENIED** as it is unnecessary to protect this Court's judgment.

SO ORDERED this 21st day of August, 2024.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI